**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

                *Plaintiff,*

      v.                          Case No. 9:21-cv-81119-DMM

FANE LOZMAN,

                *Defendant.*

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 1

    A.    Statutory and Regulatory Background ................................................... 1

    B.    Factual Background ................................................................................. 2

STANDARD OF REVIEW .............................................................................................. 6

ARGUMENT ................................................................................................................... 7

I.    Defendant Violated Clause Two of Section 10 of the Rivers and Harbors Act. ............... 7

    A.    Defendant Built or Commenced the Building of Structures. .................................. 7

    B.    The Unauthorized Structures Are in Navigable Waters Where No Harbor Lines Have Been Established. ......................................................................... 10

    C.    Defendant Built Structures Without a Permit. ....................................... 13

II.    Defendant Violation Clause One of Section 10 of the Rivers and Harbors Act. .............. 13

III.    Defendant's Purported Affirmative Defenses Have No merit. ......................... 15

IV.    This Court Should Require Defendant Remove his Structures from Lake Worth Lagoon. ........................................................................................ 16

    A.    The Court Should Issue the Statutory Injunction that Congress Authorized. ....... 16

    B.    The Equitable Requirements for the Issuance of a Traditional Injunction Are Also Met. ......................................................................................... 18

CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................6

*Bd. of Comm'rs of Port of New Orleans v. M/V Agelos Michael*,
390 F. Supp. 1012 (E.D. La. 1974)...................................................................13

*Blue Cross and Blue Shield v. Weitz*,
913 F.2d 1544 (11th Cir. 1990) .......................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................7

*Commodity Futures Trading Comm'n v. Notus LLC*,
No. 22-20291, 2023 WL 6196953 (S.D. Fla. Sept. 22, 2023)...........................18

*Ellis v. England*,
432 F.3d 1321 (11th Cir. 2005) .........................................................................7

*Gresham v. Windrush Partners, Ltd.*,
730 F.2d 1417 (11th Cir. 1984) .......................................................................18

*Keener v. Convergys Corp.*,
342 F.3d 1264 (11th Cir. 2003) .......................................................................18

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) .................................................................16, 17

*Lozman v. City of Riviera Beach*,
568 U.S. 115 (2013)........................................................................................10

*Matthews v. Aviation Performance Sols., LLC*,
No. 21-80857, 2022 WL 17988153 (S.D. Fla. Feb. 11, 2022) .....................16, 18

*Time Warner Ent./Advance-Newhouse P'ship v. Worldwide Elecs., L.C.*,
50 F. Supp. 2d 1288 (S.D. Fla. 1999) ..............................................................17

*United States v. Angell*,
292 F.3d 333 (2d Cir. 2002)..............................................................................9

*United States v. Appalachian Elec. Power Co.*,
311 U.S. 377 (1940)..........................................................................................2

*United States v. Bigan,*
   274 F.2d 729 (3d Cir. 1960)................................................................................................. 7

*United States v. Flu Fighter Corp,*
   No. 05-61940, 2009 WL 10668958 (S.D. Fla. Feb. 11, 2009) ................................ 17

*United States v. Harrell,*
   926 F.2d 1036 (11th Cir. 1991) ........................................................................................ 2

*United States v. Hayes Int'l Corp.,*
   415 F.2d 1038 (5th Cir. 1969) ........................................................................................ 18

*United States v. Members of Est. of Boothby,*
   16 F.3d 19 (1st Cir. 1994)................................................................................................. 13

*United States v. Raven,*
   500 F.2d 728 (5th Cir. 1974) ........................................................................................... 15

*United States v. Republic Steel Corp.,*
   362 U.S. 482 (1960)............................................................................................... 8, 13, 14

*United States v. Rio Grande Dam & Irrigation Co.,*
   174 U.S. 690 (1899)........................................................................................................... 10

*United States v. Schmitt,*
   999 F. Supp. 317 (E.D.N.Y.1998) *aff'd,* 28 F. App'x 63 (2d Cir. 2002).................................. 8

*United States v. Seda Perez,*
   825 F. Supp. 447 (D.P.R. 1993)........................................................................................ 9

*United States v. Sene X Eleemosynary Corp.,*
   479 F. Supp. 970 (S.D. Fla. 1979) ................................................................................. 18

*United States v. Sexton Cove Ests., Inc.,*
   389 F. Supp. 602 (S.D. Fla. 1975)
   *rev'd in part on other grounds*, 526 F.2d 1293 (5th Cir. 1976)......................... 10, 15

*United States v. Tubbs,*
   No. 19-80553, 2019 WL 7376706 (S.D. Fla. Nov. 22, 2019) ................................ 15

*United States v. W. Indies Transp., Inc.,*
   127 F.3d 299 (3d Cir. 1997).............................................................................................. 9

*Wyandotte Transp. Co. v. United States,*
   389 U.S. 191 (1967).............................................................................................................. 1

**Statutes**

33 U.S.C. § 403 ....................................................................................................... 1, 7, 8

33 U.S.C. § 404 .......................................................................................................... 13

33 U.S.C. § 406 ....................................................................................................... 2, 16

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 1

Fed. R. Civ. P. 56(a) ................................................................................................... 6

Local Rule 56.1 ........................................................................................................... 1

**Code of Federal Regulations**

33 C.F.R. § 320.4(o)(1) ............................................................................................. 13

33 C.F.R. § 322.2(b) ................................................................................................... 9

33 C.F.R. § 322.3(a) ................................................................................................... 2

33 C.F.R. § 329.4 ............................................................................................... 2, 10, 11

33 C.F.R. § 329.8 ................................................................................................. 10, 15

33 C.F.R. § 329.8(a)(3) ............................................................................................. 10

33 C.F.R. § 329.12 ..................................................................................................... 11

33 C.F.R. § 329.12(b) ............................................................................................... 11

**Other Authorities**

2 Bouvier's Law Dictionary 1051 (rev. 1897) ........................................................... 8

1 Century Dictionary & Cyclopedia 712 (1899) ........................................................ 7

7 Century Dictionary & Cyclopedia 6001 (1899) ...................................................... 8

Black's Law Dictionary 1559 (9th ed. 2009) ............................................................. 8

## INTRODUCTION

Plaintiff, the United States of America, seeks an injunction requiring Defendant, Fane Lozman, to remove unauthorized structures and obstructions from Lake Worth Lagoon. Defendant installed the three floating docks and a shipping container in navigable waters without authorization and in violation of the Rivers and Harbors Appropriation Act of 1899 ("RHA"). Congress specifically authorized injunctive relief to remove an offending structure as a remedy in the RHA. Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, the United States moves for summary judgment on its claim that Defendant violated the RHA and requests that the Court enter an injunction requiring Defendant to remove his three floating docks and shipping container from the waters of Lake Worth Lagoon unless and until he obtains authorization for the structures from the U.S. Army Corps of Engineers ("Corps"). The Court should also enjoin Defendant from erecting any other structures in the waters of Lake Worth Lagoon without prior authorization. A proposed order accompanies this motion.

## BACKGROUND

### A.      Statutory and Regulatory Background

Congress enacted the RHA "to prevent obstructions in the Nation's waterways." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Clause one of RHA section 10 prohibits "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States." 33 U.S.C. § 403. Clause two of RHA section 10 also makes it unlawful "to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army." *Id.* With limited exceptions

1

not present here, a Department of Army permit is required under section 10 for the installation of structures or work in or affecting navigable waters of the United States. 33 C.F.R. § 322.3(a).

"Navigable waters of the United States" include "those waters that are subject to the ebb and flow of the tide." 33 C.F.R. § 329.4; *United States v. Harrell*, 926 F.2d 1036, 1039 (11th Cir. 1991) ("The Corps of Engineers' regulations promulgated pursuant to the Rivers and Harbors Act incorporate the [*United States v. Appalachian Elec. Power Co.*, 311 U.S. 377 (1940)] definition, defining navigable waters of the United States as 'those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.'" (quoting 33 C.F.R. § 329.4)). Further, "[a] determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity." 33 C.F.R. § 329.4.

The United States is authorized to commence a civil action for injunctive relief to remove any structures or parts of structures erected in violation of RHA section 10. 33 U.S.C. § 406.

### B.    Factual Background

This case concerns floating docks, a shipping container, and various appurtenances that Defendant placed in Lake Worth Lagoon. Lake Worth Lagoon is Palm Beach County's largest estuary, spanning approximately twenty-one miles from North Palm Beach to Ocean Ridge. SOF ¶ 10.[1] Lake Worth Lagoon is up to a mile wide and connected to the Atlantic Ocean via two inlets. SOF ¶ 11. The Atlantic Intracoastal Waterway also cuts through the estuary as it traverses the East Coast of the United States. SOF ¶ 12. Lake Worth Lagoon is subject to the ebb and flow of the tide and is also used to transport interstate commerce. SOF ¶ 13.

---

[1]    References to "SOF" are to the United States' Statement of Material, Uncontroverted Facts and accompanying exhibits filed contemporaneously with this motion.

In June 2021, when the United States commenced this action, Defendant had placed several floating docks and a modified shipping container in Lake Worth Lagoon. *See* SOF ¶¶ 16–20, 22–23. Most of the structures were in the waters over a partially submerged property that Defendant owns with the address 5101 North Ocean Drive, Riviera Beach, Florida. SOF ¶¶ 1–2. The Complaint and the parties refer to that property as the "Site." SOF ¶ 2. Defendant identified that location as "A" in SOF Exhibit 19, reproduced below. SOF ¶ 56.

In August 2021, a Florida state court ordered Defendant to remove his floating docks and shipping container from the Site. SOF ¶¶ 26–29.

In October 2021, this Court held a hearing on the United States' motion for a preliminary injunction. *See* ECF No. 1, 4, 29. At that hearing, Defendant testified that he had "removed 1800 individual cubes" from the Lake Worth Lagoon and the only structure remaining was his "910-square-foot container home." SOF ¶ 30.

What remained around the time of the preliminary injunction hearing were two floating docks, one of which later broke into two pieces, and the modified shipping container. SOF ¶¶ 34–35, 38, 72–74. The floating docks each consist of concrete, a foam core, and wood holding the modules together. SOF ¶ 36. The floating docks are designed to be held in position by pilings. SOF ¶¶ 42–43. Each concrete module weighs at least 4,000 pounds, and together they weigh 120,000 to 150,000 pounds. SOF ¶ 41. The floating concrete dock that supports the shipping container is about sixty-by-eight feet. SOF ¶ 37. The two other sections of floating dock not supporting the shipping container are eighty to ninety feet long. SOF ¶ 38. The two sections of floating dock not supporting the shipping container had previously been one section until they broke into two pieces. SOF ¶ 38. Defendant attempts to hold the floating docks together with

rope. SOF ¶¶ 50–51. The floating docks are not vessels, nor are they capable of self-propulsion. SOF ¶¶ 45–46. None of Defendant's structures has navigation lights. SOF ¶ 46.



*SOF Ex. 17 (photograph depicting Defendant's remaining structures)*

The shipping container is about twenty feet long, eight feet wide, and weighs about 12,000 pounds. SOF ¶ 44. Defendant modified it to include windows, doors, stairs, and a steel rooftop deck, among other additions. SOF ¶¶ 57–58. Defendant refers to the shipping container as his "floating home," which he built to maintain a homestead designation for purposes of state tax law. SOF ¶¶ 56–57. Defendant has slept in the shipping container only twice. SOF ¶ 59.

In August 2021, Defendant moved the floating docks and the shipping container to a different location near Little Munyon Island in Lake Worth Lagoon. SOF ¶ 72. Defendant identified this location as "B" in SOF Exhibit 19, reproduced below. SOF ¶ 72. Defendant kept the structures in place with "as many as eight anchors." SOF ¶ 73. In location B, the structures were entirely within the waters of Lake Worth Lagoon and away from the shoreline. SOF ¶ 74.

Within a couple months, Defendant moved the two floating docks and the shipping container near the western edge of a different property that is north of the Site, away from the shore, and completely within the tidal waters of Lake Worth Lagoon. SOF ¶¶ 72, 75, 77. The

property has an address of 5301 N Ocean Drive. SOF ¶ 7. Defendant is trustee of a trust that owns the property. SOF ¶ 6. Defendant identified this location as "C" in SOF Exhibit 19, reproduced below. SOF ¶ 75. Location C is where the floating docks and shipping container have been for most of the time during the pendency of this case (about two years). SOF ¶ 76.

   While at location C, one of the floating docks split into two pieces. SOF ¶ 38. Defendant has kept the structures in place at this location with two anchors: one connected to two docks and the other connected to one dock. SOF ¶ 48. The anchors have been connected to the floating docks by chains affixed into piling pockets on the floating docks. SOF ¶ 48. Defendant identified 5301 N Ocean Drive as the project address when he applied for a permit to install pilings to moor his container home and floating docks. SOF ¶ 99.

   Sometime in early December 2023 (shortly after he was deposed in this case), Defendant again moved his three floating docks and shipping container back to the Site, waterward of the mean high-water line. SOF ¶¶ 4–5, 86, 88–91.



*SOF Exhibit 19*

At various times, Defendant's floating docks have become unmoored and have drifted farther into Lake Worth Lagoon. In perhaps the most concerning incident—which was detailed at the preliminary injunction hearing—the eighty-foot dock with the modified shipping container became unmoored, floated across Lake Worth Lagoon, and beached at a public park on the opposite side of the Lagoon from the Site. SOF ¶ 70. The floating docks have continued to become unmoored since the preliminary injunction hearing. SOF ¶ 69. They become detached from one another and drift hundreds of feet apart multiple times a year. SOF ¶¶ 52–55. After one of the docks broke in half, the pieces spun in a circle with the wind. SOF ¶ 83. And they move with the action of the tide, waves, and wind, sometimes hundreds of feet from one day to the next. SOF ¶ 82.

Defendant's structures harm the Lake Worth Lagoon ecosystems by damaging seagrass. SOF ¶¶ 61, 84. Photographs show visible damage to seagrass in Lake Worth Lagoon caused by the chains and anchors Defendant is using to try to secure the floating docks. *Id.*



*Diaz Decl. ¶ 32 (SOF Ex. 17)*          *Diaz Decl. ¶ 28 (SOF Ex. 17)*

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues

to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* Where the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ARGUMENT

The undisputed evidence demonstrates Defendant violated two independent clauses of RHA section 10. To establish a violation of clause two in this case, the United States must prove Defendant (1) built or commenced the building of structures (2) in navigable waters outside established harbor lines or where no harbor lines have been established (3) without a permit. *See* 33 U.S.C. § 403. To establish a violation of clause one, the United States must prove that Defendant created an obstruction to the navigable capacity of any water of the United States without authorization. As demonstrated below, Defendant is liable under both clauses. The United States first addresses clause two, and then clause one.

## I.    DEFENDANT VIOLATED CLAUSE TWO OF SECTION 10 OF THE RIVERS AND HARBORS ACT.

### A.    Defendant Built or Commenced the Building of Structures.

Building or commencing the building of structures under section 10 is "the purposeful creation of something formulated or designed, construction work in the conventional sense." *United States v. Bigan*, 274 F.2d 729, 732 (3d Cir. 1960); *see also* 1 Century Dictionary & Cyclopedia 712 (1899) (defining "build" as "[t]o frame or construct, as an edifice; form by uniting materials into a regular structure; erect"). Here, Defendant built or caused others to build the unauthorized structures. Defendant hired a company to fabricate a shipping container into what Defendant refers to as his "floating home." SOF ¶¶ 57–58. Defendant caused the modified

shipping container to be installed on top of several floating dock modules that were connected using timber. SOF ¶¶ 20, 34–37, 57–58. Defendant towed his shipping container on floating docks to the Site and moored the structures to vegetation along the shore using chain and rope. SOF ¶¶ 47, 62. Defendant had attempted to secure the floating docks by driving boards through the piling pockets, but that "didn't really work out" and "proved to be a real mess," in Defendant's words. SOF ¶¶ 64–67. When the shipping container and floating docks were at the Site, Defendant continued to build upon the structures by installing a railing and steps. SOF ¶ 58. Thus, Defendant's floating docks and modified shipping container at issue in this case exist in Lake Worth Lagoon as a direct result of Defendant's acts.

The concrete floating docks, the modified shipping container, and other attachments (such as railings and steps) are "structures" within the plain meaning of the RHA. Clause two of section 10 applies to specifically described structures and "other structures." 33 U.S.C. § 403. "Structures" are anything that are built, constructed, or purposefully joined together. *See* 2 Bouvier's Law Dictionary 1051 (rev. 1897) (defining "structure" as "[t]hat which is built or constructed"); 7 Century Dictionary & Cyclopedia 6001 (1899) (defining "structure" as "[t]hat which is built or constructed; an edifice or a building of any kind; in the widest sense, any production or piece of work artificially built up, or composed of parts joined together in some definite manner; any construction"); Black's Law Dictionary 1559 (9th ed. 2009) (defining "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together"). Courts interpret section 10 broadly. *See, e.g.*, *United States v. Republic Steel Corp.*, 362 U.S. 482, 487 (1960).

The floating docks shipping container that Defendant fabricated to use as a "floating home" and other attachments are pieces of work that have been artificially built or purposefully

joined together. They thus fall well within the plain meaning of the term "structure," especially in consideration of the expansive interpretation afforded section 10. *See, e.g., United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 310 (3d Cir. 1997) (upholding section 10 conviction where defendants strung together numerous barges and attached them to land with rope and wire cable to form a permanent dock for loading activities, repairs, and housing employees); *United States v. Angell*, 292 F.3d 333, 337 (2d Cir. 2002) (finding floating docks to be unauthorized structures); *United States v. Schmitt*, 999 F. Supp. 317, 328, 370 (E.D.N.Y.1998), *aff'd,* 28 F. App'x 63 (2d Cir. 2002) (same).

The regulatory definition further supports that floating docks and shipping containers are regulated under section 10. The Corps' regulations define "structure" to include, without limitation "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction." 33 C.F.R. § 322.2(b). Here, Defendant describes the floating portions of his structure as "floating docks." SOF ¶ 34. In fact, Defendant uses the floating docks to dock his boat. SOF ¶ 85; SOF Ex. 18 (last photograph). The structures can also be considered "permanent mooring structures" under the Corps' regulations. *See United States v. Seda Perez*, 825 F. Supp. 447, 452 (D.P.R. 1993) (finding that "beach cottages sitting on top of pontoons to give them some maritime flavor" are permanently moored structures within the meaning of RHA section 10 and Corps' regulations). And, given their weight and size, the floating docks and shipping container easily qualify as structures that are an "obstacle or obstruction" because they are tangible objects that "interfere with or diminish" navigation by requiring vessels to move around

them. *See United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 709 (1899) (defining "obstruct").

Defendant also admits that his structures are not a "vessel." SOF ¶ 45. Defendant's structures do not have a motor, cannot steer on their own, are not capable of self-propulsion, do not have navigation lights, are not registered as a vessel, and must be towed by two boats to be moved around the Lake Worth Lagoon. SOF ¶¶ 45–47. Thus, even without Defendant's admission, Defendant's structures are not vessels based on the objective evidence of the structures' purpose and the physical attributes and behavior of the structures. *See Lozman v. City of Riviera Beach*, 568 U.S. 115, 128 (2013).

In sum, Defendant's floating docks and shipping container are "structures" under the RHA, as defined by caselaw, the plain meaning of the word "structure," and the RHA's implementing regulations.

**B.      The Unauthorized Structures Are in Navigable Waters Where No Harbor Lines Have Been Established.**

Navigable waters are "those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce." 33 C.F.R. § 329.4; *United States v. Sexton Cove Ests., Inc.*, 389 F. Supp. 602, 607–08 (S.D. Fla. 1975), *rev'd in part on other grounds*, 526 F.2d 1293 (5th Cir. 1976) ("[T]he test of navigability in tidal waters is the ebb and flow of the tide."). Determinations of navigability "are not limited to the natural or original condition of the waterbody." 33 C.F.R. § 329.8. "Private ownership of the lands underlying the waterbody . . . does not preclude a finding of navigability." *Id.* § 329.8(a)(3).

There is no dispute that the waters of Lake Worth Lagoon are subject to the ebb and flow of the tide and that it is used to transport interstate or foreign commerce. SOF ¶ 13. Lake Worth Lagoon is, therefore, a navigable water. *See* 33 C.F.R. § 329.4.

The Corps' regulatory jurisdiction under RHA section 10 extends across the entire surface of tidal waters. 33 C.F.R. § 329.12; *see also id.* § 329.4 ("A determination of navigability, once made, applies laterally over the entire surface of the waterbody . . . ."). Here, that means jurisdiction extends to the edge (i.e., mean high-water line) of Lake Worth Lagoon, even if portions of the waterbody are extremely shallow. *Id.* § 329.12(b) ("Regulatory jurisdiction extends to the entire surface and bed of all waterbodies subject to tidal action. Jurisdiction thus extends to the edge . . . of all such waterbodies, even though portions of the waterbody may be extremely shallow . . . .").

Defendant's floating docks and shipping container are and have always been in the waters of Lake Worth Lagoon below the mean high-water line. Photographs from January 2021 show the floating docks supporting Defendant's shipping container in the waters of Lake Worth Lagoon near the Site. SOF ¶ 63; SOF Ex. 20. This was the area where the structures were located when the United States commenced this action. Defendant identified that location as "A" in SOF Exhibit 19, reproduced above. SOF ¶ 57. The area around the structures is completely submerged by the waters of Lake Worth Lagoon. SOF Ex. 20; SOF ¶ 2. And the structures were moored to vegetation on the shore using chain and rope, which appear to have been an attempt to prevent the structures from being carried away in the water. SOF ¶ 62.

In August 2021, Defendant moved two floating docks and the shipping container to a different location near Little Munyon Island in Lake Worth Lagoon for less than two months. SOF ¶ 72. Defendant identified the location as "B" in SOF Exhibit 19, reproduced above. SOF

11

¶ 72. Defendant kept the structures in place with "as many as eight anchors." SOF ¶ 73. In location B, the structures were again entirely within the tidal waters of Lake Worth Lagoon, away from the shoreline, and below the mean high-water line. SOF ¶ 74.

Defendant then moved the two floating docks and shipping container near the western edge of a different property (5301 North Ocean Drive) that is north of the Site (location "C" in SOF Exhibit 19). SOF ¶ 75. Defendant's unauthorized structures were, again, fully within the Lake Worth Lagoon and below the mean high-water line. SOF ¶¶ 8–9, 77. Defendant has kept the two floating docks and shipping container at this location for two years. SOF ¶ 76. Defendant kept the structures in place at this location with anchors. SOF ¶ 48. The anchors were connected to the floating docks by chains affixed into piling pockets on the docks. SOF ¶ 48.

Defendant was deposed on November 29, 2023, in this case. SOF Ex. 2. Sometime in early December 2023, after Defendant was deposed, he again moved his three floating docks and shipping container back near the shoreline of the Site. SOF ¶ 86. Keeping his structure at this location would violate the Florida state court injunction requiring that Defendant remove the structures from the Site. SOF ¶ 87. Even if Defendant could keep the structures there under state law, they are within the navigable waters of Lake Worth Lagoon. SOF ¶¶ 88–91. A photograph of the structures at the Site shows they are surrounded by the waters of Lake Worth Lagoon at this location. SOF ¶ 88; SOF Ex. 25. The photograph was taken on December 5, 2023, about two hours *after* high tide. SOF ¶ 88. And, consistent with the tide tables, watermarks on adjacent vegetation indicated the water surface at the time of the photograph was about eight inches below the mean high-water level. SOF ¶ 89. The apparent shoreline is also shown in the photograph based on rafted debris and herbaceous vegetation. SOF ¶ 90. The floating docks and

shipping container are below the mean high-water line and thus in navigable waters. SOF ¶ 91; *see also* SOF ¶¶ 4–5 (surveys showing mean high-water line).

Section 11 of the RHA authorized establishment of harbor lines shoreward of which no individual permits were required. 33 U.S.C. § 404. After 1970, the Corps required permits for activities shoreward of harbor lines. *See* 33 C.F.R. § 320.4(o)(1). No harbor lines have been established at the Site or any other location where Defendant's floating docks and shipping container have been. SOF ¶¶ 14–15.

### C. Defendant Built Structures Without a Permit.

Defendant never completed an application for or received a permit from the Corps to build structures in Lake Worth Lagoon at the Site. SOF ¶ 97–109.

Thus, the United States has shown that there is no genuine dispute as to any material fact regarding the elements of clause two of section 10, and the United States is entitled to judgement as a matter of law.

## II. DEFENDANT VIOLATION CLAUSE ONE OF SECTION 10 OF THE RIVERS AND HARBORS ACT.

In addition to violating clause two of the RHA, Defendant also violated clause one of RHA section 10 by creating an obstruction to the navigable capacity of Lake Worth Lagoon. This is an additional and independent basis for Defendant's liability. *See United States v. Members of Est. of Boothby*, 16 F.3d 19, 23–24 (1st Cir. 1994) (explaining that RHA section 10 permitting requirements may be triggered separately by an obstruction to navigation).

The term "obstruction" under the RHA is read broadly "to include diminution of the navigable capacity of a waterway by means not articulated" in other provisions of the RHA. *Republic Steel Corp.*, 362 U.S. at 489. *See, e.g.*, *Bd. of Comm'rs of Port of New Orleans v. M/V*

*Agelos Michael*, 390 F. Supp. 1012, 1015 (E.D. La. 1974) (construction crane's thirteen-foot overhang over navigable waters created an obstruction to navigation in violation of section 10).

Defendant's floating docks and shipping container are obstructions to the navigable capacity of Lake Worth Lagoon. The concrete docks consist of concrete, a foam core, and wood holding the modules together. SOF ¶ 36. Each floating concrete module weighs about 4,000 pounds. SOF ¶ 41. The floating dock supporting Defendant's shipping container is about sixty-by-eight feet. SOF ¶ 37. The two other sections of floating dock not supporting the shipping container are long, about eighty-by-eight feet or ninety-by-eight feet. SOF ¶ 38 The shipping container is about twenty-by-eight-feet and weighs about 12,000 pounds. SOF ¶ 44. Defendant modified it to include windows, doors, stairs, steel rooftop deck, among other additions. SOF ¶¶ 57–58. The floating docks have a low profile, and none of Defendant's structures has navigation lights. SOF ¶¶ 40, 46.

The floating docks are not vessels, nor are they equipped to move on their own. SOF ¶¶ 45–46. Rather, they move with the action of the current, tide, waves, and wind, sometimes hundreds of feet from one day to the next. SOF ¶ 82. Because the floating docks are not tied to pilings, it is easier for them to come apart. SOF ¶ 49. The floating docks have broken in places, become detached from one another, and drifted far apart. SOF ¶¶ 38–39, 53–55, 82–83. And in at least one instance, the floating dock supporting the shipping container floated to the other side of Lake Worth Lagoon from the Site. SOF ¶ 70.

Defendant's floating docks and shipping container have diminished the navigable capacity of Lake Worth Lagoon and thus fall well within the broad understanding of an obstruction under section 10. *See Republic Steel Corp.*, 362 U.S. at 485 (holding that industrial deposits placed in navigable waters created an "obstruction" within the meaning of RHA section

10); *United States v. Raven*, 500 F.2d 728, 731 (5th Cir. 1974) (affirming that sunken vessel "in or near waters that are open for the use of others" constitutes an "obstruction" within the meaning of RHA section 10).

## III.   DEFENDANT'S PURPORTED AFFIRMATIVE DEFENSES HAVE NO MERIT.

None of the four purported "affirmative defenses" Defendant asserts has merit. Answer 5–6, ECF No. 89. Where an affirmative defense is contested, Defendant "bears the initial burden of showing that the affirmative defense is applicable." *United States v. Tubbs*, No. 19-80553, 2019 WL 7376706, at *2 (S.D. Fla. Nov. 22, 2019) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)). The second and fourth purported affirmative defenses (lack of federal jurisdiction and failure to state a claim under which relief may be granted) are not affirmative defenses because they go to whether the unauthorized structures are in navigable waters. And there is no evidence in the record to support Defendant's first or third affirmative defenses (civil theft and civil conversion).

Even if there was record evidence to support any of the assertions in Defendant's first affirmative defense (that the Site was "dry land" before the Corps "gave tacit approval" to dredge an area of the Site decades before Defendant acquired it), the defense fails. As explained above, determinations of navigability "are not limited to the natural or original condition of the waterbody." 33 C.F.R. § 329.8. Thus, even if it were true that the portion of the Site that is submerged with Lake Worth Lagoon increased due to illegal dredging, that does not change the fact that today (and at the time Defendant began building the structures at issue here) the waters in which the structures are located are navigable waters of the United States. *See, e.g.*, *United States v. Sexton Cove Ests., Inc.*, 389 F. Supp. at 608 ("Once a developer connects illegal canals with navigable waters of the United States, these canals themselves become navigable waters of

the United States. In the case at bar, the mean high tide line is now located on each bank of the defendants' canal system.").

## IV.   THIS COURT SHOULD REQUIRE DEFENDANT REMOVE HIS STRUCTURES FROM LAKE WORTH LAGOON.

The Court should require Defendant to remove his three floating docks and shipping container from the waters of Lake Worth Lagoon (i.e., below the mean high-water line). Defendant would be free to attempt (again) to apply for authorization for the structures from the Corps, [2] but the United States respectfully requests that the structures be removed without further delay. The Court should require Defendant remove his unauthorized structures from Lake Worth Lagoon within thirty days of issuing an order on this motion and enjoin Defendant from erecting or placing any other structures in the waters of Lake Worth Lagoon without prior authorization. Congress specifically provided for removal of structures erected in violation of RHA section 10. 33 U.S.C. § 406. The traditional factors for a permanent injunction are also satisfied.

### A.   The Court Should Issue the Statutory Injunction that Congress Authorized.

Congress specified that injunctive relief is a remedy for violations of the RHA. *See id.* That is, "the removal of any structures or parts of structures erected in violation of [RHA sections 9, 10, and 11] may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist." *Id.* This is referred to as a statutory injunction. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) ("A statutory injunction is available where a statute bans certain conduct or establishes certain rights, then specifies that a court may grant an injunction to enforce the statute."). "The standard for the issuance of a statutory injunction is governed by the statute itself." *Matthews v. Aviation Performance Sols., LLC*, No. 21-80857, 2022 WL 17988153, at *5 (S.D. Fla. Feb. 11, 2022)

---

[2]      Defendant may need to obtain authorization from state and local regulators as well.

(Middlebrooks, J.); *see Klay*, 376 F.3d at 1098. Here, the United States has demonstrated that Defendant is liable under clause one and clause two of RHA section 10. Defendant's past actions and statements show that he will continue to violate section 10 by allowing the structures to remain in the waters of Lake Worth Lagoon, making an injunction to prevent Defendant's future violation of the law necessary. *See* SOF ¶¶ 24–25, 92. In fact, Defendant testified that, even if the Court orders him to remove the unauthorized structures from the Site, Defendant will move them to another part of Lake Worth Lagoon. SOF ¶ 93. Additionally, Defendant has stated that he currently has two additional "container homes" that he might place in the Lake Worth Lagoon after this case is resolved. SOF ¶¶ 94–96. Thus, an injunction requiring the removal of the structures from the navigable waters of Lake Worth Lagoon (not just the Site) is necessary. Because Defendant is liable under clause one and two of RHA section 10, the statutory requirements Congress created for the RHA's statutory injunction have been met, and the Court should require Defendant to remove the unauthorized structures.

A statutory injunction is distinct from a traditional injunction that derives from the inherent equitable powers of the Court. *See Klay*, 376 F.3d at 1097. The Court would be on firm ground to issue the statutory injunction without reaching the equitable prerequisites for traditional injunctive relief. *See United States v. Flu Fighter Corp*, No. 05-61940, 2009 WL 10668958, at *5 (S.D. Fla. Feb. 11, 2009) ("[T]o obtain a statutory injunction under 21 U.S.C. § 332(a), the government need only show that each statutory condition has been met by a preponderance of the evidence."); *Time Warner Ent./Advance-Newhouse P'ship v. Worldwide Elecs., L.C.*, 50 F. Supp. 2d 1288, 1302 (S.D. Fla. 1999) ("When express authority for issuance of 'statutory' injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional 'equitable' prerequisites of such relief."); *United States v. Sene X*

*Eleemosynary Corp.*, 479 F. Supp. 970, 980 (S.D. Fla. 1979) ("Where an injunction is authorized by statute, it is proper to issue such an order to restrain violations of the law if the statutory conditions are satisfied."); *see also Commodity Futures Trading Comm'n v. Notus LLC*, No. 22-20291, 2023 WL 6196953, at *5 (S.D. Fla. Sept. 22, 2023) ("Traditional standards applicable to private parties seeking injunctive relief do not apply to the CFTC." (cleaned up)).

The United States acknowledges that the Court has considered the prerequisites for traditional injunctive relief for a statutory injunction in a different context. *See Matthews*, 2022 WL 17988153, at *5. The United States explains in the following section why those equitable prerequisites are also met, in the event the Court wishes to consider them here.

### B.     The Equitable Requirements for the Issuance of a Traditional Injunction Are Also Met.

The requirements for a permanent injunction are: (1) actual success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law. *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003). Each of these requirements is established here.

*First*, as demonstrated above the United States is entitled to summary judgment on the merits of the government's RHA claims, and thus has shown actual success on the merits.

*Second*, continuing irreparable harm is presumed by Defendant's violation of section 10. "Where . . . an injunction is authorized by statute and the statutory conditions are satisfied . . . the usual prerequisite of irreparable injury need not be established and the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury before obtaining an injunction." *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969) (cleaned up)); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (discussing *Hayes* favorably).

18

Even if the United States were required to show irreparable harm beyond the statutory violation, this element is satisfied. The floating docks and shipping container are an impediment to navigation in Lake Worth Lagoon. This is true even if the unauthorized structures are near the shore. Indeed, the Corps' permitting authority for the hundreds of docks near the shores of Lake Worth Lagoon is derived from the same statute that Defendant is in violation of here, RHA section 10. But, as explained above, Defendant keeps his floating docks and shipping container far from the shoreline at a property near the Site. Defendant only recently (that is, in December 2023) brought the structures nearer to the shoreline of the Site. But Defendant cannot keep the structures there because of the state court injunction.

The floating docks and shipping container also pose a threat to public safety and harm aquatic resources. The floating docks are designed to be secured with pilings through their piling pockets. SOF ¶¶ 42–43. Instead, Defendant has jerry-rigged them together with rope, chains, and anchors. SOF ¶¶ 48, 50–51. The docks weigh over a hundred thousand pounds, have a low profile, and are not equipped with navigation lights. SOF ¶¶ 40–41, 46. They are not sufficiently moored causing them to swing or become adrift. SOF ¶¶ 49–55, 82–84. They become unattached and drift away from where Defendant has attempted to secure them (including additional instances after the preliminary injunction hearing). SOF ¶¶ 49–55, 69–70. Young people go on Defendant's structures, which have been vandalized and are in a state of disrepair. SOF ¶¶ 78–81. And the structures are destroying seagrass where Defendant has attempted to secure them. SOF ¶¶ 61, 84. Moreover, a man Defendant hired drowned while helping Defendant dismantle smaller parts of the floating docks in the summer of 2021. SOF ¶¶31–33.

*Third*, there is no adequate remedy at law—indeed, Congress expressly authorized injunctive relief for the violation at issue here. Defendant is in continued violation of federal law.

*Finally*, the requested injunction would allow Defendant to apply for a permit from the Corps for the structures—just as any other member of the public would be required to do before erecting structures in Lake Worth Lagoon (including docks). Indeed, the United States previously agreed to place this case in abeyance while Defendant applied for a permit from the Corps. ECF No. 54. Whether Defendant ever intended to follow through with the agreement is questionable. About five months after he finally submitted an incomplete permit application to the Corps, Defendant filed a motion to lift the abeyance. ECF No. 59. The Court denied that motion. ECF No. 64. And despite the passage of over eighteen months from the stipulation to place the case in abeyance, Defendant never completed his application, which prevented the Corps from processing it. SOF ¶¶ 97–108. Defendant ultimately refused to complete his application and instead moved to lift the abeyance again, which the Court granted. ECF No. 69. Defendant has been afforded every opportunity to come into compliance but has not. The United States respectfully requests that the Court require Defendant remove the unauthorized structures without further delay.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the United States and issue the requested injunction in the proposed order filed with this motion.

Dated: January 9, 2024                    Respectfully submitted,

                                          TODD KIM
                                          Assistant Attorney General

                                          */s/ Rachel D. Martinez*
                                          BRANDON N. ADKINS (Bar ID No. A5502752)
                                          RACHEL D. MARTINEZ (Bar ID No. A5503137)
                                          United States Department of Justice
                                          Environment & Natural Resources Division
                                          P.O. Box 7611
                                          Washington, D.C. 20044
                                          Tel: (202) 616-9174
                                          Fax: (202) 514-8865
                                          Brandon.Adkins@usdoj.gov
                                          Rachel.Martinez@usdoj.gov

                                          MARKENZY LAPOINTE
                                          United States Attorney

                                          DEXTER LEE (FL Bar No. 936693)
                                          Assistant United States Attorney
                                          Southern District of Florida
                                          99 N.E. 4th Street
                                          Miami, FL 33132
                                          Tel: (305) 961-9320
                                          Fax: (305) 530-7679
                                          Dexter.Lee@usdoj.gov

                                          *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the United States' Motion for Summary Judgment, United States' Statement of Material, Uncontroverted Fact, and accompanying exhibits were served on January 9, 2024, by email on Defendant Fane Lozman, who consented in writing to electronic service.


*/s/ Rachel D. Martinez*
United States Department of Justice