UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

FANE LOZMAN,

    *Defendant*.

Case No. 9:21-cv-81119-DMM

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## PROPOSED FINDINGS OF FACT

1. Lake Worth Lagoon is an estuary in Palm Beach County.

2. Lake Worth Lagoon is up to a mile wide and connected to the Atlantic Ocean via two inlets.

3. The Atlantic Intracoastal Waterway also cuts through Lake Worth Lagoon as it traverses the East Coast of the United States.

4. Lake Worth Lagoon is subject to the ebb and flow of the tide.

5. Lake Worth Lagoon is used to transport interstate commerce.

6. As early as January 2021, Defendant built or placed in the waters of Lake Worth Lagoon a shipping container that is supported by floating concrete docks.

7. Defendant initially had several modules of floating dock at or near submerged land he owns in Lake Worth Lagoon. Three sections of Defendant's floating docks and his shipping container remain in Lake Worth Lagoon.

8. The remaining floating docks consist of concrete, a foam core, and wood holding the modules together.

9. Defendant's floating docks are designed to be held in position by pilings and float up and down with the water along the pilings.

10. Each concrete module weighs at least 4,000 pounds, and together they weigh 120,000 to 150,000 pounds.

11. The section of floating dock that supports the shipping container is about sixty-by-eight feet.

12. The two other sections of floating dock not supporting the shipping container are eighty to ninety feet long.

13. The two sections of floating dock not supporting the shipping container had previously been one section until it broke into two pieces.

14. Defendant attempts to hold the floating docks together with rope.

15. Defendant's shipping container is about twenty feet long, eight feet wide, and weighs about 12,000 pounds.

16. Defendant hired a company to fabricate Defendant's shipping container into what Defendant refers to as his "floating home." Defendant caused the shipping container to be modified to include windows, doors, stairs, and a steel rooftop deck, among other additions.

17. Defendant caused the shipping container to be installed on top of the floating docks.

18. Defendant towed his shipping container on floating docks to submerged land he owns and moored the structures to vegetation along the shore using chain and rope.

19. Defendant attempted to secure the floating docks by driving boards through the piling pockets, but he was unsuccessful.

20. When the shipping container and floating docks were in the waters of Lake Worth Lagoon, Defendant continued to build upon the structures by installing a railing and steps.

21. Defendant has slept in the shipping container twice.

22. Defendant's floating docks are not vessels.

23. Defendant's floating docks are not capable of self-propulsion.

24. Defendant's floating docks and shipping container are not equipped with navigation lights.

25. Defendant moves his floating docks and shipping container from place to place in Lake Worth Lagoon by towing them with a boat.

26. Defendant attempts to secure the floating docks and shipping container with multiple anchors.

27. At each location in Lake Worth Lagoon where Defendant has attempted to secure his floating docks and shipping container, the structures have been within the tidal waters of Lake Worth Lagoon.

28. No harbor lines have been established at any location in Lake Worth Lagoon where Defendant has placed his floating docks and shipping container.

29. Dock construction guidelines and special conditions of associated authorizations are used to maintain what the Corps identifies as best management practices for in-water work.

30. Defendant's work on his floating docks and shipping container have not been in accordance with best management practices, which include insufficient mooring causing the structures to swing or become adrift causing impacts to resources and unfixed impediments to navigation, or constructing the structure in a manner that does not shade or ground on seagrass.

31. Defendant's floating docks and shipping container are in poor condition and unlikely to withstand significant seasonal storms.

32. Defendant's floating docks and shipping container move with the action of the tide, waves, and wind, sometimes hundreds of feet from one day to the next.

33. Defendant's floating docks have become unmoored and have drifted farther into Lake Worth Lagoon.

34. Multiple times a year, Defendant has had to relocate the floating docks and tie them back together. The sections of floating dock have been 200 to 400 feet apart when Defendant has gone out to relocate them and tie them back together.

35. In one incident, the eighty-foot dock with the modified shipping container became unmoored, floated across Lake Worth Lagoon, and beached at a public park on the opposite side of the Lagoon from Defendant's submerged property.

36. After one of the docks broke in half, the pieces spun in a circle with the wind.

37. Defendant hired a man named Darren Doonan to help Defendant dismantle some of the floating docks.

38. Mr. Doonan drowned while working for Defendant at or near Defendant's submerged property in the summer of 2021.

39. Defendant's structures harm the Lake Worth Lagoon ecosystems by damaging seagrass.

40. Photographs show visible damage to seagrass in Lake Worth Lagoon caused by the chains and anchors Defendant is using to try to secure the floating docks.

41. At no point has Defendant received authorization for the floating docks and shipping container he built in Lake Worth Lagoon from the U.S. Army Corps of Engineers.

42. Defendant refuses to remove his floating docks and shipping container from the navigable waters of Lake Worth Lagoon.

43. Defendant fabricated two other "container homes" and initially intended to "tie them all together" in Lake Worth Lagoon.

44. The other two "container homes" are in storage, and Defendant might put them in Lake Worth Lagoon after this case is resolved.

**PROPOSED CONCLUSIONS OF LAW**

1. With limited exceptions not present, a Department of Army permit is required under section 10 of the Rivers and Harbors Appropriation Act of 1899 ("RHA") for the installation of structures or work in or affecting navigable waters of the United States. 33 C.F.R. § 322.3(a).

2. Defendant violated two independent clauses of RHA section 10. 33 U.S.C. § 403.

3. Defendant violated clause two of RHA section 10. 33 U.S.C. § 403.

4. Defendant violated clause one of RHA section 10. 33 U.S.C. § 403.

**I.   DEFENDANT VIOLATED CLAUSE TWO OF RHA SECTION 10.**

5. Clause two of section 10 of the Rivers and Harbors Appropriation Act of 1899 ("RHA") makes it unlawful "to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army." 33 U.S.C. § 403.

6. To establish a violation of clause two in this case, the United States must prove Defendant (1) built or commenced the building of structures (2) in navigable waters outside established harbor lines or where no harbor lines have been established (3) without a permit. 33 U.S.C. § 403.

**A.   Defendant Built or Commenced the Building of Structures.**

7. Under the plain meaning of the RHA, "structures" are anything that are built, constructed, or purposefully joined together.

8. The regulatory definition of "structure" includes, without limitation, "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty,

5

artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction." 33 C.F.R. § 322.2(b).

9. Defendant's concrete floating docks, the modified shipping container, and other attachments (such as railings and steps) are "structures" under the plain meaning of the RHA and also the federal regulatory definition of "structure."

10. And, given their weight and size, the floating docks and shipping container easily qualify as an "obstacle or obstruction" under the regulatory definition of "structure" because they are tangible objects that "interfere with or diminish" navigation by requiring vessels to move around them. *See United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 709 (1899) (defining "obstruct").

11. Defendant's floating docks and shipping container are not a vessel.

**B.    Defendant's Structures are in Navigable Waters.**

12. Navigable waters of the United States are "those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce." 33 C.F.R. § 329.4; *United States v. Harrell*, 926 F.2d 1036, 1039 (11th Cir. 1991).

13. "A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity." 33 C.F.R. § 329.4.

14. Determinations of navigability "are not limited to the natural or original condition of the waterbody." 33 C.F.R. § 329.8.

15. Federal navigational servitude grants the U.S. government a superior and dominant right to regulate navigable waters of the United States over state law. *United States v. Rands*, 389 U.S. 121, 123–24 (1967).

16. "Private ownership of the lands underlying the waterbody . . . does not preclude a finding of navigability." 33 C.F.R. § 329.8(a)(3).

17. Federal regulatory jurisdiction extends to the edge (i.e., mean high-water line) of Lake Worth Lagoon, even if portions of the waterbody are extremely shallow. 33 C.F.R. § 329.12(b) ("Regulatory jurisdiction extends to the entire surface and bed of all waterbodies subject to tidal action. Jurisdiction thus extends to the edge . . . of all such waterbodies, even though portions of the waterbody may be extremely shallow . . . .").

18. The waters of Lake Worth Lagoon are navigable waters because they are subject to the ebb and flow of the tide.

19. The waters of Lake Worth Lagoon are navigable waters also because they are used to transport interstate or foreign commerce.

20. At the time the United States filed its Complaint and since then, Defendant's floating docks and shipping container are and have always been in the waters of Lake Worth Lagoon below the mean high-water line.

21. Section 11 of the RHA authorized establishment of harbor lines shoreward of which no individual permits were required. 33 U.S.C. § 404. After 1970, the Corps required permits for activities shoreward of harbor lines. *See* 33 C.F.R. § 320.4(o)(1).

22. No harbor lines have been established at any location where Defendant's floating docks and shipping container have been located.

23. A bulkhead line in a property deed is not a harbor line and does not define the reach of navigable waters of the United States.

### C. Defendant Has No Permit for His Structures.

24. Defendant never completed an application for or received a permit from the Corps to build structures in Lake Worth Lagoon.

## II. DEFENDANT ALSO VIOLATED CLAUSE ONE OF RHA SECTION 10.

25. Clause one of RHA section 10 also prohibits "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States." 33 U.S.C. § 403.

26. In addition to violating clause two of the RHA, Defendant also violated clause one of RHA section 10 by creating an obstruction to the navigable capacity of Lake Worth Lagoon.

27. The term "obstruction" under the RHA is read broadly "to include diminution of the navigable capacity of a waterway by means not included" in other provisions of the RHA. *United States v. Republic Steel Corp.*, 362 U.S. 482, 489 (1960).

28. Defendant's floating docks and shipping container have diminished the navigable capacity of Lake Worth Lagoon and thus fall well within the broad understanding of an obstruction under section 10.

29. Defendant's floating docks and shipping container are obstructions to the navigable capacity of Lake Worth Lagoon.

## III. THE UNITED STATES IS ENTITLED TO INJUNCTIVE RELIEF.

30. Congress specified that injunctive relief is a remedy for violations of the RHA. 33 U.S.C. § 406.

31.     The United States is authorized to commence a civil action for injunctive relief to remove any structures or parts of structures erected in violation of RHA section 10. 33 U.S.C. § 406.

32.     Because Defendant is liable under clauses one and two of RHA section 10, the statutory requirements Congress created for the RHA's statutory injunction have been met, and an injunction requiring Defendant to remove the unauthorized structures from the waters of Lake Worth Lagoon is appropriate.

33.     The traditional requirements of a permanent injunction are also met: (1) actual success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law.

34.     First, the United States demonstrated actual success on the merits.

35.     Second, continuing irreparable harm is presumed by Defendant's violation of section 10. Further, the floating docks and shipping container are an impediment to navigation, threat to public safety, and harm aquatic resources.

36.     Third, there is no adequate remedy at law—indeed, Congress expressly authorized injunctive relief for the violation at issue.

Dated: March 4, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
RACHEL D. MARTINEZ (Bar ID No. A5503137)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Rachel.Martinez@usdoj.gov

MARKENZY LAPOINTE
United States Attorney

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
Tel: (305) 961-9320
Fax: (305) 530-7679
Dexter.Lee@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the United States' Proposed Findings of Fact and Conclusions of Law was served on March 4, 2024, by email on Defendant Fane Lozman, who consented in writing to electronic service.

*/s/ Brandon N. Adkins*
United States Department of Justice
